UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| E.B., individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff*, | **COMPLAINT—CLASS ACTION** |
| *v.* | **JURY DEMAND** |
| KIMI CRUSH LIMITED, a California corporation, ANT HIVE CREATIONS, INC., a California corporation, PRINSLOO GLOBAL GROUP, INC., a New York corporation, JOYBOX STUDIO LIMITED, a Nevada corporation, and STARFISH TECHNOLOGY LIMITED, a Nevada corporation, | |
| *Defendants*. | |

Plaintiff E.B. brings this case, individually and on behalf of all others similarly situated, against Defendants Kimi Crush Limited ("Kimi Crush"), Ant Hive Creations, Inc. ("Ant Hive"), Prinsloo Global Group, Inc. ("Prinsloo"), JoyBox Studio Limited ("JoyBox"), and Starfish Technology Limited ("Starfish") (collectively, "Defendants") to enjoin their operation of illegal online casino games and for disgorgement and damages resulting from their unlawful conduct. Plaintiff E.B. alleges as follows upon personal knowledge as to herself and her own acts and experiences, and upon information and belief, including investigation conducted by her attorneys, as to all other matters.

COMPLAINT—CLASS ACTION
Case No.

- 1 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

## NATURE OF THE ACTION

1.       This action arises from a predatory scheme orchestrated by Defendants through various illegal online casino apps, including Bingo Royal and Solitaire Master. Defendants lure consumers by falsely marketing their apps as innocuous, "skill-based" bingo and solitaire games, when in reality they function as unregulated online casinos where users are encouraged to wager—and lose—real money on virtual slot machines and other casino-style games of chance.

2.       To obscure their operations, Defendants regularly rebrand their gambling apps under new names and new app-store publisher identities. But the apps themselves did not change—each retained the same unique Apple App Store identification number, which remains constant even when an app's name or listed publisher is changed. For example, "Bingo Royal" (App ID 6478530492), previously distributed under the publisher identity "Prinsloo Game Studio," is now listed as "Bingo Wealth" with Kimi Crush Limited as the app-store publisher. "Solitaire Riches: Win Cash" (App ID 6479977081) appears in the app store as being distributed by the developer Kimi Crush, but it was previously listed as "Solitaire Duels" with JoyBox Studio Limited as the app-store publisher, and Prinsloo as the copyright holder. "Solitaire Trials" (App ID 6471232743) is currently listed as published by Ant Hive Creations, Inc. as the app-store publisher. Before that, it was distributed under the publisher identity JoyBox Studio Limited as "Solitaire Master."

3.       Virtual gambling is highly addictive and strictly regulated in Washington. By law, gambling activities may only be offered by licensed operators subject to the oversight and control of the Washington State Gambling Commission. All forms of online gambling are expressly prohibited in Washington. *See* RCW § 9.46.240(1) ("Whoever knowingly transmits or receives gambling information by . . . the internet, a telecommunications transmission system, or similar means . . . shall be guilty of a class C felony").

4.       By enabling Washington residents to wager real money on games of chance over the internet and cash out their winnings, Defendants operate unlicensed and illegal online casinos in direct violation of Washington law. And without any oversight or accountability, Defendants

COMPLAINT—CLASS ACTION
Case No.

- 2 -

flout Washington's gambling regulations by, for example, failing to provide gambling addiction resources and safeguards for Washington consumers (WAC 230-06-068), refusing to honor self-exclusion requests (RCW § 9.46.071), and ignoring the required fair play standards, consumer protections, and fraud-prevention measures (RCW § 9.46.010).

5.      Defendants' misconduct inflicts severe harm on vulnerable populations, especially individuals suffering from gambling addiction. Defendants aggressively market their apps through app stores and social media channels, using deceptive tactics to lure users into what appear to be innocuous games. By disguising illegal online casinos as casual, "skill-based" gaming apps, Defendants create exactly the kind of unchecked gambling that Washington's strict anti-gambling laws were designed to prevent. This deliberate deception inflicts financial ruin, psychological distress, and compulsive gambling addiction on unsuspecting Washington consumers.

6.      Accordingly, Plaintiff E.B., on behalf of herself and other similarly situated individuals, brings this lawsuit to expose Defendants' predatory practices, recover funds lost by their victims, and dismantle their deceptive and unregulated gambling operations.

**PARTIES**

7.      Plaintiff E.B. is a natural person and a citizen of the State of Washington.

8.      Defendant Kimi Crush Limited is a corporation organized and existing under the laws of the State of California, with its principal place of business listed as 3739 Balboa St., Suite 1163, San Francisco, California, 94121. Defendant Kimi Crush conducts business throughout this District, the State of Washington, and the United States.

9.      Defendant Ant Hive Creations, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business listed as 385 S. Lemon Ave., Suite E276, Walnut, California, 91789. Defendant Ant Hive conducts business throughout this District, the State of Washington, and the United States.

10.      Defendant JoyBox Studio Limited is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business listed as 1050 E. Flamingo

COMPLAINT—CLASS ACTION
Case No.

- 3 -

EDELSON PC
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

Rd., Suite 107, Mailbox No. 1319, Las Vegas, Nevada, 89119. Defendant JoyBox conducts business throughout this District, the State of Washington, and the United States.

11. Defendant Prinsloo Global Group, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business listed as 2131 Ocean Ave., Apt. 5B, Brooklyn, New York, 11229. Defendant Prinsloo conducts business throughout this District, the State of Washington, and the United States.

12. Defendant Starfish Technology Limited is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business listed as 2605 S Decatur Blvd, Suite 123, Mailbox No. 426, Las Vegas, Nevada, 89102. Defendant Starfish conducts business throughout this District, the State of Washington, and the United States.

## JURISDICTION AND VENUE

13. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection applies to this action.

14. The Court has personal jurisdiction over Defendants because they conduct substantial, continuous, and systematic business in this District—including by entering into contracts with Washington residents and engaging in ongoing economic relationships with them. Furthermore, Defendants purposefully directed their activities to the District by providing services to the residents of this District that it knew would be used within this District, advertising its services in Washington, and actually profiting from the resulting gambling taking place in Washington.

15. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Washington Gambling Law

16. The Washington Legislature declared more than 50 years ago that, "The public

COMPLAINT—CLASS ACTION
Case No.

- 4 -

policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control." RCW § 9.46.010.

17.    To achieve these policy goals, Washington law establishes a comprehensive regulatory framework administered by the Washington State Gambling Commission. RCW § 9.46.040. All lawful gambling activities in Washington must be conducted by licensed operators who comply with strict consumer protection standards, fair play requirements, problem gambling programs, and ongoing regulatory oversight. RCW § 9.46.070 *et seq.*

18.    Washington law expressly prohibits online gambling. RCW § 9.46.240 makes it a Class C felony for any person to "knowingly transmit[] or receive[] gambling information by telephone . . . the internet, a telecommunications transmission system, or similar means[.]" RCW § 9.46.240(1). This prohibition extends to anyone who "knowingly installs or maintains equipment for the transmission or receipt of gambling information[.]" *Id.*

19.    The statute defines "gambling" broadly to include "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence[.]" RCW § 9.46.0237. A "thing of value" includes "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge." RCW § 9.46.0285.

20.    Licensed gambling operators in Washington are required to provide problem gambling resources and self-exclusion programs for individuals suffering from gambling addiction. RCW § 9.46.071. These protections are critical safeguards designed to protect vulnerable consumers from the harms of compulsive gambling.

21.    Washington law provides a private right of action for persons who lose money from illegal gambling. Under RCW § 4.24.070, "[a]ll persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or

COMPLAINT—CLASS ACTION
Case No.

- 5 -

player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

22.     Defendants' online casino operations plainly violate Washington law. As detailed below, Defendants operate unregulated and unlicensed online casinos that lure Washington residents to gamble real money over the internet without any oversight or consumer protections.

***The Online Casino Defendants and Their Corporate Shells***

23.     Defendants operate as an integrated enterprise to conduct illegal online gambling operations in Washington and throughout the United States. Despite operating through multiple corporate entities with frequently changing names and publisher identities, the gambling operations themselves remain constant.

24.     Prinsloo operated illegal online casino games that were distributed through the Apple App Store under the publisher identity "Prinsloo Game Studio." These apps included "Bingo Royal," "Solitaire Duels," "Bubble Fever," and similar gambling titles marketed as skill-based games.

25.     Starfish served as both a payment processor and operator for Prinsloo's gambling apps. At one point, Starfish's own website stated:

> Welcome to Starfish Technology Limited (referred to as 'Starfish,' 'we,' 'us,' or 'our'). The game is developed by Prinsloo Global Group Inc. (the 'Developer'), and we are authorized to operate and publish the game. You acknowledge and agree that we are the distribution service provider approved by the developer and are responsible for the operation, user support, and commercial services of this game.

26.     JoyBox also operated as a publisher identity for Defendants' gambling apps, including "Solitaire Master."

27.     Kimi Crush and Ant Hive were both formed in California in late November 2024 and immediately took over as the App Store publisher identities for Defendants' existing gambling apps. Both entities use mailbox service addresses, list a single officer in their public corporate registrations, and serve no apparent business purpose other than to act as new publisher identities for the same illegal gambling operations previously conducted under the "Prinsloo Game Studio" and "JoyBox Studio Limited" names.

COMPLAINT—CLASS ACTION
Case No.

- 6 -

28.    The evidence of continuity between the old and new publisher identities is overwhelming. The gambling apps themselves never changed—only the names and App Store publisher identities changed. Each app retains its unique Apple App Store identification number, which remains constant regardless of name or publisher changes:

(a) **Bingo Royal → Bingo Wealth**: Apple App ID 6478530492 was originally associated with "Bingo Royal" published by "Prinsloo Game Studio" and is now associated with "Bingo Wealth" published by Kimi Crush Limited. It is the same app.

(b) **Solitaire Master → Solitaire Trials**: Apple App ID 6471232743 was originally associated with "Solitaire Master" published by JoyBox Studio Limited, then associated with "Solitaire Trials," published by Ant Hive Creations, Inc. It is the same app.

(c) **Fortune Bubble → Bubble Glint**: Apple App ID 6478530320 was originally associated with "Fortune Bubble by Prinsloo Game Studio" and is now associated with "Bubble Glint" published by Kimi Crush Limited. It is the same app.

(d) **Bubble Fever → Bubble Gold**: Apple App ID 6504378464 was originally associated with "Bubble Fever: Win Real Cash by Prinsloo Game Studio" and is now associated with "Bubble Gold" published by Kimi Crush Limited. It is the same app.

(e) **Solitaire Duels → Solitaire Riches: Win Cash**: Apple App ID 6479977081 was originally associated with "Solitaire Duels" published by JoyBox Studio Limited, and is now associated with "Solitaire Riches: Win Cash" published by Kimi Crush Limited, with Prinsloo holding the copyright. It is the same app.

29.    The nature of Defendants' corporate shell game is evident from their own public statements. As shown below in Figure 1, Kimi Crush's Facebook page initially stated, " 🎮 Welcome to Prinsloo Games! 🎉 We're the creators behind Fortune Bubble, Bingo Royal, Solitaire Duels, Fortune Slot, Bubble Fever, 8 Ball Cash, and Bubble Peak!":

COMPLAINT—CLASS ACTION
Case No.

- 7 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424



**(Figure 1, Kimi Crush Facebook Page)**

30.     In this way, Kimi Crush explicitly identified itself as "Prinsloo Games" and claimed credit for the same gambling apps previously operated under the Prinsloo name. Though Kimi Crush later removed this language on its Facebook page, the initial admission reveals what Defendants sought to obscure: Kimi Crush is simply Prinsloo operating under a new corporate identity.

31.     This continuity is also reflected in Defendants' App Store disclosures. As shown below in Figure 2, the Apple App Store information card for Bingo Wealth lists Kimi Crush Limited as the publisher but still credits "© Prinsloo Global Group" in the copyright line:



**(Figure 2, Bingo Wealth App Store Information Card)**

32.     Together, Kimi Crush's public "Prinsloo Games" admission and the continuing "© Prinsloo Global Group" App Store copyright line show that Defendants' rebranding did not involve a transfer to a new business. It was a name-change and publisher-account swap designed to conceal the continuity of the same gambling operation.

COMPLAINT—CLASS ACTION
Case No.

- 8 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

33. The integrated nature of Defendants' operations is confirmed by their own admissions. On November 12, 2025, Plaintiff E.B. contacted JoyBox's customer service department through Facebook Messenger and asked whether Prinsloo and JoyBox were the same company. A JoyBox customer service representative responded, "Hi there, the game products owned by these two companies are different, but they are all ours." When E.B. asked if the games are owned by JoyBox or Prinsloo, the representative stated, "We are one company, but two different departments." This admission directly confirms that JoyBox and Prinsloo are not separate businesses but rather part of a single integrated gambling operation using multiple corporate identities.

***Defendants Lure Consumers by Marketing Their Gambling Apps as Harmless Games***

34. Defendants' illegal gambling apps are marketed as casual, skill-based games available for free download on the Apple App Store. The apps present themselves as innocent bingo, solitaire, and bubble-popping games where players can compete for prizes. The apps are not advertised as casino-style games.

35. Consumers who download and play Defendants' apps for the first time are largely unaware that the apps will unlock access to illegal casino gambling. Once a user meets certain thresholds—by spending a certain amount of money on the tournament-style bingo, solitaire, and bubble-popping games—the apps "unlock" to reveal slot machines and plinko games where actual gambling occurs.

36. Defendants further conceal the true nature of this "unlocking" through the app's "VIP Center," which frames higher-VIP access as a benign progression mechanic in which additional "games" will "UNLOCK." The VIP Center displays game titles and icons—such as "Panda Gold" and "Eureka Blast"—without disclosing that these "games" are casino-style gambling games that require real-money wagering, as shown in Figure 3, below:

COMPLAINT—CLASS ACTION
Case No.

- 9 -



(**Figure 3, Screenshot of Bingo Royal VIP Center**)

37.     For the avoidance of doubt, this Complaint does not challenge the legality of Defendants' tournament-style bingo, solitaire, or bubble-popping games standing alone. Rather, Plaintiff challenges Defendants' use of those advertised tournament-style games as the on-ramp to a concealed "unlocking" scheme that reveals and promotes actual casino-style gambling—like slots and plinko—where users wager (and lose) real money. It is these unlocked casino-style games of chance that violate Washington law, as described herein.

38.     Defendants' slot machines and plinko games are functionally identical to those found in physical casinos, featuring the same visual and audio elements designed to encourage continued gambling. Screenshots from Bingo Royal, shown in Figure 4 below, demonstrate that its games closely resemble traditional casino slot machines and plinko boards:

COMPLAINT—CLASS ACTION
Case No.

- 10 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424



**(Figure 4, Screenshots from Bingo Royal)**

39.       Users wager real money on these casino games. Users can quickly and easily add money to their accounts using Apple Pay or their credit cards, as shown in Figure 5, below.



**(Figure 5, Screenshots of Bingo Royal Deposit Process)**

40.       Users can wager substantial sums on these games. Depending on VIP level and game, the apps permit wagers of hundreds of dollars per spin or turn. Upon reaching the highest VIP levels, users are permitted to place wagers of *$500 or more* per spin or turn.

41.       The slot machines and plinko games operate entirely through chance, with no element of skill affecting outcomes. After a user initiates a spin or play, the user's device transmits wager and gameplay information to Defendants' servers, which execute algorithms that

COMPLAINT—CLASS ACTION
Case No.

- 11 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

determine the outcome. No subsequent action by the user affects the result—the outcomes are based entirely on chance.

42.     Defendants maintain detailed records of each user's account balance, wagers, wins, and losses. Users can continue playing with their winnings or exit the app and return later, with their account balances and records preserved by Defendants.

43.     Defendants operate without any of the consumer protections, fair play standards, or regulatory oversight required for legal gambling operations in Washington. They provide no meaningful responsible gaming resources, refuse to honor self-exclusion requests from problem gamblers, and operate entirely outside the jurisdiction of the Washington State Gambling Commission.

## FACTS SPECIFIC TO PLAINTIFF E.B.

44.     In 2024, Plaintiff E.B. downloaded Defendants' games, including Bingo Royal and Solitaire Master, from the Apple App Store, unaware that they would unlock and provide access to online casino games—like slot machines and plinko—involving real-money wagering. Plaintiff would not have downloaded or spent money in them had she known they were designed to unlock casino-style gambling.

45.     Plaintiff E.B. began playing Bingo Royal and other games operated by Defendants on her Apple device and ultimately reached VIP Level 8. Over the course of her play, Plaintiff made hundreds of deposits of real money into Defendants' apps and wagered— and lost—that money on Defendants' casino-style games.

46.     Since she began playing Defendants' games in 2024, Plaintiff E.B. has wagered and lost (and Defendants have therefore won) hundreds of thousands of dollars on Defendants' games of chance.

47.     Plaintiff contacted Defendants' customer service and requested refunds, but Defendants refused to refund her losses.

48.     Plaintiff notified Defendants that she suffers from a gambling addiction and requested that Defendants terminate her access to the apps. Defendants responded that they

COMPLAINT—CLASS ACTION
Case No.

- 12 -

would not honor her self-exclusion request unless Plaintiff provided a letter from a medical professional corroborating her condition. Plaintiff provided a letter from her therapist. Nonetheless, Defendants refused to exclude Plaintiff or terminate her access, and instead sent her bonus incentives intended to induce her to return and continue gambling, causing her to wager and lose additional money.

49.     In light of her gambling addiction diagnosis and the significant risks of reputational and professional harm that Plaintiff faces if she uses her full name, she seeks to proceed pseudonymously at this stage.

## CLASS ALLEGATIONS

50.     **Class Definition**: Plaintiff E.B. brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All persons in the State of Washington who lost money wagering at Defendants' online casino-style games.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and any of Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

51.     **Numerosity**: On information and belief, tens of thousands of consumers fall into the definition of the Class. Members of the Class can be identified through Defendants' records, discovery, and other third-party sources.

52.     **Commonality and Predominance**: There are many questions of law and fact common to Plaintiff's and the Class's claims, and those questions predominate over any

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendants' online casino games are "gambling" as defined by RCW § 9.46.0237;

(b) Whether Defendants are the proprietors for whose benefit the online casino games are played or whether Defendants operate the casino;

(c) Whether Plaintiff and each member of the Class lost money or anything of value by gambling;

(d) Whether Defendants misrepresented their apps as "skill-based" games rather than casino-style gambling;

(e) Whether Defendants violated the Washington Consumer Protection Act, RCW § 19.86.010, *et seq.*;

(f) Whether Starfish, as a payment processor, is an operator under Washington law; and

(g) Whether Defendants have been unjustly enriched as a result of their conduct.

53. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff's and the members of the Class sustained damages arising out of Defendants' wrongful conduct.

54. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class, as Plaintiff and each member of the Class lost money playing Defendants' games of chance. Plaintiff also has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the Class.

COMPLAINT—CLASS ACTION
Case No.

- 14 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

55.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies that Plaintiff challenges apply and affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same.

56.     **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The harm suffered by the individual members of the Class is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendant's wrongful conduct. Absent a class action, it would be difficult if not impossible for the individual members of the Class to obtain effective relief from Defendants. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

57.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

COMPLAINT—CLASS ACTION
Case No.

- 15 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

**FIRST CAUSE OF ACTION**
**Violation of Revised Code of Washington § 4.24.070**
**(On behalf of Plaintiff and the Class)**

58.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59.     Plaintiff, members of the Class, and Defendants are all "persons" as defined by RCW § 9.46.0289.

60.     The state of Washington's "Recovery of money lost at gambling" statute, RCW § 4.24.070, provides that "[a]ll persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

61.     "Gambling," defined by RCW § 9.46.0237, "means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence[.]"

62.     RCW § 9.46.0285 states that a "'Thing of value,' as used in this chapter, means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge." The real money that Plaintiff and the Class wagered on Defendants' online casino games is thus a "thing[] of value" under RCW § 9.46.0285.

63.     Defendants' online casino games are "Contest[s] of chance," as defined by RCW § 9.46.0225, because they are "contest[s], game[s], gaming scheme[s], or gaming device[s] in which the outcome[s] depend[] in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." Defendants' games are programmed to have outcomes that are determined entirely upon chance—a contestant's skill (or lack thereof) does not affect the outcomes.

COMPLAINT—CLASS ACTION
Case No.

- 16 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

64.    RCW § 9.46.0201 defines "Amusement game[s]" as games where "The outcome depends in a material degree upon the skill of the contestant[,]" amongst other requirements. Defendants' online casino games are not "Amusement game[s]" because their outcomes are dependent entirely upon chance and not upon the skill of the player and because the games are "contest[s] of chance," as defined by RCW § 9.46.0225.

65.    Defendants' online casino games are not "pinball machine[s] or similar mechanical amusement device[s]" as contemplated by RCW § 9.46.0241 because:

(a) the games are electronic rather than mechanical;

(b) the games confer replays but those replays are recorded and can be redeemed on separate occasions (*i.e.*, they are not "immediate and unrecorded"); and

(c) the games contain electronic mechanisms that vary the chance of winning free games or the number of free games which may be won (*e.g.*, the games allow for different wager amounts).

66.    Defendants' online casino games are illegal gambling games because they are online games at which players wager things of value—real money—and by an element of chance (*e.g.*, by spinning an online slot machine) are able to win more real money or lose the money they wagered.

67.    Defendants are operators of the casino games and are proprietors for whose benefit the online gambling games are played because they own and operate the casino games for their own profit.

68.    As such, Plaintiff and the Class gambled when they used real money to wager on Defendants' casino-style games. Plaintiff and each member of the Class staked money, in the form of real money, at Defendant's games of chance (*e.g.*, Defendants' slot machines, plinko, and other games of chance) for the chance of winning additional things of value (*e.g.*, more real money).

69.    As a direct and proximate result of Defendants' operation of their games, Plaintiff E.B. and each member of the Class have lost money wagering at Defendants' games of chance.

COMPLAINT—CLASS ACTION
Case No.

- 17 -

EDELSON PC
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

70. Accordingly, Plaintiff E.B., on behalf of herself and the Class, seeks an order (1) requiring Defendants to cease the operation of their gambling games; (2) requiring Defendants to honor Plaintiff's self-exclusion request and blocking her from accessing their gambling games; and (3) awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable.

## SECOND CAUSE OF ACTION
**Violation of the Washington Consumer Protection Act, RCW § 19.86.010, *et seq.***
**<u>(On behalf of Plaintiff and the Class)</u>**

71. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72. Washington's Consumer Protection Act, RCW § 19.86.010 *et seq.* ("CPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

73. To achieve that goal, the CPA prohibits any person from using "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." RCW § 19.86.020.

74. The CPA states that "a claimant may establish that the act or practice is injurious to the public interest because it . . . [v]iolates a statute that contains a specific legislative declaration of public interest impact[.]" RCW § 19.86.093.

75. Defendants have violated RCW § 9.46.010, *et seq.*, because their online casino games are illegal online gambling games as described above. Defendants also hide the fact that their apps unlock following sufficient gameplay to reveal actual gambling through games of chance.

76. Defendants' wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendants were engaged in the operation of making computer games available to the public.

77. Defendants' acts and practices were and are injurious to the public interest because Defendants, in the course of their business, continuously advertised to and solicited the

COMPLAINT—CLASS ACTION
Case No.

- 18 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

general public in Washington State and throughout the United States to play their unlawful online casino games of chance. This was part of a pattern or generalized course of conduct on the part of Defendants, and many consumers have been adversely affected by Defendants' conduct and the public is at risk.

78.    Defendants have profited from their operation of unlawful games of chance, amassing potentially millions of dollars from the losers of their games of chance.

79.    As a result of Defendants' conduct, Plaintiff and the Class members were injured in their business or property—*i.e.*, economic injury—in that they lost money wagering on Defendants' unlawful games of chance.

80.    Defendants' unfair or deceptive conduct proximately caused Plaintiff's and the Class members' injury because, but for the challenged conduct, Plaintiff and the Class members would not have lost money wagering at or on Defendants' games of chance, and they did so as a direct, foreseeable, and planned consequence of that conduct.

81.    Accordingly, Plaintiff E.B., on behalf of herself and the Class, seeks an order (1) requiring Defendants to cease the operation of their gambling games; (2) requiring Defendants to honor Plaintiff's self-exclusion request and blocking her from accessing their gambling games; and (3) awarding the recovery of actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

82.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

83.    Plaintiff and the Class have conferred a benefit upon Defendants in the form of the money Defendants received from them to wager at Defendants' online casino games.

84.    Defendants appreciated and had knowledge of the benefits conferred upon them by Plaintiff and the Class.

COMPLAINT—CLASS ACTION
Case No.

- 19 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

85. Under principles of equity and good conscience, Defendants should not be permitted to retain the money obtained from Plaintiff and the members of the Class, which Defendants have unjustly obtained as a result of their unlawful operation of unlawful online gambling games. As it stands, Defendants have retained millions of dollars in profits generated from their unlawful games of chance and should not be permitted to retain those ill-gotten profits.

86. Accordingly, Plaintiff E.B. and the Class seek full disgorgement and restitution of any money Defendants have retained as a result of the unlawful and/or wrongful conduct alleged herein.

### **PRAYER FOR RELIEF**

Plaintiff E.B., individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

(a) Certifying this case as a class action on behalf of the Class defined above, appointing E.B. as representative of the Class, and appointing her counsel as class counsel;

(b) Declaring that Defendants' conduct, as set out above, violates the CPA;

(c) Entering judgment against Defendants in the amount of the losses suffered by Plaintiff and each member of the Class;

(d) Enjoining Defendants from continuing the challenged conduct;

(e) Awarding damages to Plaintiff and the Class members in an amount to be determined at trial, including trebling as appropriate;

(f) Awarding restitution to Plaintiff and Class members in an amount to be determined at trial, and requiring disgorgement of all benefits that Defendants have unjustly received;

(g) Awarding reasonable attorney's fees and expenses;

(h) Awarding pre- and post-judgment interest, to the extent allowable;

(i) Entering judgment for injunctive and/or declaratory relief as necessary to protect the interests of Plaintiff and the Class; and

(j) Awarding such other and further relief as equity and justice require.

COMPLAINT—CLASS ACTION
Case No.

- 20 -

**EDELSON PC**
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**E.B.**, individually and on behalf of all others similarly situated,

Dated: March 3, 2026

By:  *s/ Sarah LaFreniere*
          Sarah LaFreniere #62621

EDELSON PC
Sarah LaFreniere (#62621)
slafreniere@edelson.com
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424

EDELSON PC
Michael Ovca*
movca@edelson.com
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Tel: (312) 589-6370

*Pro hac vice* admission to be sought.

*Attorneys for Plaintiff and the Putative Class*

COMPLAINT—CLASS ACTION
Case No.

- 21 -

EDELSON PC
P.O. Box 75493
Seattle, WA 98125
Tel: (206) 647-6424